JOHN H. PATTERSON, appellant,

*v.*

THOMAS B. MADDEN, respondent.

A testator, by his will, gave a farm to his son J. He then gave another farm to his second son, and other two farms to his wife, with remainder to his third and fourth sons. He then provided that none of the farms given to his sons should be sold by them during the life of his wife; and that if any of his sons should die without leaving issue, but leaving a widow, the farm of such son should go to his widow during her widowhood and afterwards to the heirs-at-law of the testator.—*Held*, that J. took a vested estate in fee-simple in the farm devised to him, subject, however, to be divested by his death *during the lifetime of his mother*, without leaving issue but leaving a widow; *held, further*, that by the death of the testator's wife during the lifetime of J. the limitation over to the heirs of the testator was defeated and the estate of J. became indefeasible.

Patterson *v.* Madden.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion :

The bill is filed by a vendor to compel the vendee to specifically perform a contract to purchase lands.

On January 1st, 1895, John H. Patterson, the complainant, contracted to convey to Thomas B. Madden, the defendant, by deed of general warranty, free from encumbrances, a certain tract of land in Monmouth county.

Madden agreed to pay, upon delivery of a deed for the said property, the sum of $4,000. A deed was duly executed by the complainant, and with it he attended at the time and place at which it was to be delivered, but the defendant did not then and there appear, and, although since requested to perform his part of the agreement, has refused to do so. The defendant sets up, as an answer to complainant's bill, that the complainant is not seized of a title in fee-simple, and, therefore, is unable to convey to the defendant the title for which the defendant promised to pay the $4,000.

It is not questioned that the *locus in quo* is a part of a tract of land which was devised to the complainant by his father, James Patterson. Nor is it questioned that the father had a title in fee-simple in the said land. The single question presented is what interest devolved upon the complainant by force of the devise contained in the will of his father. If such interest is a fee-simple, then the complainant is entitled to a decree, but if less than a fee-simple, he is without equity. As already remarked, to discover of what title the complainant is seized, we must recur to the will of James Patterson.

The first clause of that will is couched in the following language : "I give and bequeath unto my son John H. Patterson on the following conditions as follows, the following described tract of land," describing the farm and one-third of a tract of woodland.

By the same language he gave Samuel H., another son, another farm and one-third of the same wood-lot.

By the same language he gave to Henry Patterson, still another son, a third farm with the remaining third part of said wood-lot, subject to the use of the tenant thereon for one year from the 1st of April next after his decease.

He gave to his wife the use of the homestead farm and the big meadow adjoining, and of another farm adjoining the homestead farm during her natural life. After her death, he gave to his son Ewing Patterson one of these farms, and to his son Joseph C. Patterson the other of these farms, and divided the big meadow between these two sons. He gave certain legacies to his daughters, one of which was charged upon the farms devised to James H. and Henry Patterson. This legacy has been paid. He then ordered that none of the farms should be sold by any of his sons during the life of the testators's wife. Then follows this clause :

"I order and direct that if any of my said sons John H., Samuel H., Henry, Ewing and Joseph should die without leaving issue, and leaving a widow, then the widow of such son so becoming deceased may have the use of the farm which is herein given to such son, so long as such widow of such deceased son remains unmarried; and on the event of the marriage or decease of said widow of such son so becoming deceased, I give and bequeath unto such persons as may then be my lawful heirs forever."

The question is whether the first devise, which, under our statute, is one in fee-simple, is cut down by the subsequent clause limiting over the estate in case the devisee should die without leaving issue.

It was entirely settled at common law that the phrase " leaving no issue " or " without leaving issue," when applied to a devise of land, meant an indefinite failure of issue; but when applied to a bequest of personalty, it imported failure of issue at the time of the death of the first legatee. *3 Jarm. Wills (R. & T. ed.) 298.*

The effect of a limitation over in the event of the devisee dying leaving no issue or without leaving issue upon a preceding devise of land to a person indefinitely, or to a person for life, or to a person and his heirs was also entirely settled.

If a devise was to a devisee and his heirs, the limitation over

imported that the testator used the word "heirs" in the .qualified sense of "heirs of his body."

If the gift was to the devisee expressly for life, or was to him without words of inheritance, the limitation over implying that the testator intended that the estate to be taken by the first devisee should be of such duration as to fill up the chasm in the disposition to prevent the failure of the ulterior devise which would otherwise be bad for remoteness.   *2 Jarm. Wills 136, 137*.

The gift to the first devisee was in both instances by implication, a devise to him and the heirs of his body, and so his estate if given for life was enlarged, and, if given in fee-simple, was cut down to a fee-tail.

In the case of *Chetwood* v. *Winston, 11 Vr. 337*, the limitation over after a devise in fee was in substantially the same words as appear in the present will.

Chief-Justice Beasley, for the court of errors, remarked that the legal effect of this language, by an almost unbroken line of authorities, was to create by the rules of the common law an estate-tail.

This being the effect of the language employed in the present devise, the estate of the devisee is seized by the eleventh section of our statute of descent and transmuted into an estate for life. *Redstrake* v. *Townsend, 10 Vr. 372*.

It is to be remarked that an implied estate in fee-tail rests .upon the presumption that the testator meant by the words "without leaving issue" an indefinite failure of issue. This, however, is not a conclusive presumption, for, if it clearly appears from other language employed in the will, that issue at death was meant, such language will change the time of the failure from an indefinite to a definite date.

I fail to discover such intention clearly manifested by the testator in the present will.   But if it appeared in the most convincing shape that the testator meant by the phrase "dying without leaving issue," that the limitation over was to occur only in the event of the absence of issue at the time of the death of the first devisee, it would not in the least help the complainant.

It would not clothe him with the estate which he bargained to convey. Instead of an indefeasible fee-simple, which estate he required to fill his contract, he would then be seized of an estate in fee-simple with a limitation over by way of executory devise. His estate would be defeasible upon his dying without leaving issue and leaving a widow. *Kennedy* v. *Kennedy, 5 Dutch. 185 ; Groves* v. *Cox, 11 Vr. 40.*

In respect to the insistence of counsel for the complainant that the words "dying without leaving issue" refers to the death of the first devisee before the death of the testator, I can draw no such intention from the other language used by the testator. Nor do I regard any one of the cases cited in support of this position as pertinent to the specific devise found in the present instance.

There must be a decree for the defendant.

*Mr. Garret D. W. Vroom* and *Mr. Chauncy H. Beasley,* for the appellant.

*Mr. Edwin Robert Walker,* for the respondent.

The opinion of the court was delivered by

GUMMERE, J.

This is a suit brought by the appellant to compel the respondent to specifically perform a contract to purchase lands. The only question in the case is whether the appellant has a title to the lands contracted for which the respondent is bound to accept.

The lands in controversy were devised to the appellant by the will of his father, which bears date August 9th, 1866, and whether or not he has a valid title to them depends upon the true construction of that will.

The devise of these lands is contained in the first clause of the will, and is as follows: "I give and bequeath unto my son John H. Patterson, on the following conditions, and as follows, the following described tract of land," describing the lands which are the subject-matter of the contract which is sought to be en-

forced.  Then follow devises of other lands to the testator's sons Samuel H. and Henry.  The testator then gave to his wife for her natural life the use of the homestead farm and the meadow adjoining it, and also the use of another farm adjoining the homestead one.  After her death he gave the homestead farm to his son Joseph C. and the other farm to his son Ewing, and the one-half of the meadow to each of them.  He then gave certain pecuniary legacies to his daughters, one of which was charged upon the farms devised to John H. and Henry.  This legacy has been paid.  Then follow these two clauses:

"*Item.* I order and direct that not any of my farms that I have herein given to my said sons as herein specified, shall be sold by any of my said sons during the life of my said wife.

"*Item.* I order and direct that if any of my said sons John H., Samuel, Ewing and Joseph should die without leaving lawful issue, and leaving a widow, then the widow of such son so becoming deceased may have the use of the farm which is herein given to such son so long as such widow of such deceased son remains unmarried, and, on the event of the marriage or decease of such widow of such son so becoming deceased, I give and bequeath such farm of such son so becoming deceased unto such persons as may then be my lawful heirs forever."

It is contended by the respondent that the effect of this last provision of the will was to cut down the devise to the appellant to an estate for life; or, if not that, then to a defeasible estate in fee-simple which would be divested upon his dying without leaving issue surviving him and leaving a widow.  The view adopted by the court below was in conformity to that advanced by the respondent, and a decree was made dismissing the bill of complaint.  I cannot concur in the view expressed by the vice-chancellor as to the true construction of this will.  He considered that the estate devised to the appellant was cut down to a life estate, by the provision of the will last cited, on the theory that the words "die without leaving issue" imported an indefinite failure of issue and consequently created an estate-tail at common law; and that such an estate, as soon as it was created, was transmuted by the eleventh section of our statute of descents into an estate for life.  But this view of the effect to be given to the words "die without issue" can only be sustained, it seems

to me, by ignoring the provision of the fourth section of the supplement to the act concerning wills, approved March 12th, 1851, which was in force at the time of the execution of the will under consideration, and which declares

"that in any devise or bequest of real or personal estate in the will of any person dying after this act shall take effect, the words 'die without issue,' or 'die without lawful issue,' or 'have no issue,' or any other words which may import a want or failure of issue of any person in his lifetime or at his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the lifetime or at the death of such person, *and not an indefinite failure of issue,* unless a contrary intention shall otherwise appear by the will." *Gen. Stat. p. 3671.*

I am not able to find in this will anything which makes it appear that the testator intended that the words "die without leaving lawful issue" should import an indefinite rather than a definite failure of issue, nor is anything pointed out in the opinion below. Indeed, it is there stated that the implied estate in fee-tail, which is declared to have been created by the devise, "rests upon the *presumption* that the testator meant by the words 'without leaving issue' an indefinite failure of issue, but that such a presumption is not a conclusive one," and that if it had appeared from other language in the will that issue at death was meant, such language would change the time of the failure of issue from an indefinite to a definite date.

The rule applied by the court below in construing the words "die without leaving lawful issue," and determining that they imported an indefinite rather than a definite failure of issue, was that established by the common law. It was applied by this court in the case of *Chetwood* v. *Winston, 11 Vr. 337* (referred to in the opinion below), in construing a devise similar to that now before us. But in that case the will under consideration was evidently that of a person who had died before the passage of the act of 1851, for the opinion states that the question to be determined was "whether by force of the testamentary disposition [of certain lands] one I. D., *by the rules of the common law,* took an estate-tail." The will now before us, as has already been stated, was not executed until the year 1866, and consequently

Patterson v. Madden.

the question to be determined in the case now before us is not
what estate the devisee took in the lands devised, at common
law, but what estate he took by the rule established by the act
of 1851, which is just the reverse of the common-law rule.

Giving to the words " die without leaving lawful issue " the
effect required by the statute, they import a definite and not an
indefinite failure of issue, and consequently do not operate to cut
down the fee-simple estate devised to the appellant by his father's
will into an estate-tail.

Nor can I concur in the view expressed in the opinion below
that, assuming the words " die without leaving issue " to import
a definite failure of issue, still the appellant has not a perfect
title to the lands in controversy, because, instead of having an
indefeasible estate in fee-simple, he has an estate which is de-
feasible upon his dying without issue and leaving a widow.  As
I read the will before us, the appellant's estate becomes divested
and vests in the heirs of the testator, upon his death without
issue surviving him and leaving a widow, only in case his death
occurs during the lifetime of his mother, the widow of the
testator.

In the case of *Pennington* v. *Van Houten, 4 Halst. Ch. 745,*
decided by this court in 1852, the testator devised all his resid-
uary real and personal estate to his son Abraham.  He then pro-
vided as follows :

" My will is and I do order that my executors shall rent out all my property
for the benefit of my son Abraham, and the proceeds arising therefrom to be
put out to interest for the benefit of my son, by my executors until he shall
arrive to the age of twenty-one years; and I do further order that my execu-
tors give unto my said son Abraham, out of my estate, a good college educa-
tion and a decent support until he arrives at the age of twenty-one years; *but
if my said son Abraham should die, having no children, then my will is, and I do
hereby dispose of my property in the following manner,* viz.,"

giving it to certain collateral relations.  The question presented
by that case, as was stated by Chief-Justice Green, in delivering
the opinion of this court, was " whether, under the provisions of
the will, the limitation over of the estate given to the testator's
son Abraham was upon the death of the devisee *without children,*

46

Patterson v. Madden.

or upon the death of the devisee *under twenty-one* without children." The chief-justice, in discussing this question, says: "The doubt as to the true meaning of the will does not arise from the terms used, *but from the connection in which they stand.* The clause in the will expressing the contingency upon which the limitation over is made to depend is in these words: 'But if my said son Abraham should die having no children, then my will is' &c. There is no reference in this clause, standing alone, to the devisee's dying under twenty-one. The contingency expressed is simply the death of the devisee without children. It is insisted, however, that the clause 'under twenty-one years of age' is fairly implied from the context, or if not, from mere grammatical construction, yet that was the true meaning of the testator as collected from the whole scope of the will. The true meaning of the passage, so far as rests upon its grammatical construction, depends entirely upon the idea with which it is set in opposition. If the limitation over was immediately connected with the original devise the meaning of the will would then be clear, and the only contingency upon which the devise over is expressly limited, or which can fairly be implied or supposed to exist in the mind of the testator, is the death of the devisee without children. But the clause containing the devise over does not stand in the will in that connection, nor does the devise thus stated express the whole idea of the testator. By the will he devises the residue of his estate, real and personal, to his son absolutely in fee-simple, by the broadest and most comprehensive terms. He then provides that the whole estate shall remain in the hands of the executors for the benefit of the devisee until he is twenty-one. That out of it he shall receive an education and a decent support until he is twenty-one, and then occurs the clause in question, but if he die without children then the estate shall go over. The devise over stands not in opposition to the original devise but to the event of the devisee's coming into possession." The opinion then, after discussing other portions of the will, for the purpose of strengthening the conclusion reached by the court that the limitation over was not set in opposition to the devise itself but to the event of the devisee reaching the

age of twenty-one and coming into possession of the estate devised, declares the result to be that Abraham Van Houten, upon reaching the age of twenty-one years, became seized of an absolute and indefeasible estate in fee-simple in the lands devised to him by the will of his father, and that the limitation over was defeated by his reaching that age.

By the decision in *Pennington* v. *Van Houten,* as I understand it, two rules are established in the construction of wills containing a limitation over by way of executory devise after the death of the original devisee without issue, viz. :

*First.* If land be devised to A. in fee and a subsequent clause in the will limits such land over to designated persons in case A. dies without issue, *and A. so dies,* and the substituted devisees are *in esse* at his death, and there is no other event expressed in the will to which the limitation over can fairly be referred, then A. takes a vested fee which becomes divested at his death and vests in those to whom the estate is limited over.

*Second.* Where there is an event indicated in the will other than the death of the devisee to which the limitation over is referable (for instance, the distribution of the testator's estate or the postponement of the enjoyment of the property devised until the devisee reaches the age of twenty-one or until the exhaustion of a prior life estate), such limitation over will be construed to refer to the happening of such event or to the death of the devisee, according as the court may determine from the context of the will and the other provisions thereof, that the limitation clause is set in opposition to the event specified or is connected with the devise itself.

Since the decision of *Pennington* v. *Van Houten* the rules established by that decision have been frequently applied by our courts in construing limitations over by way of executory devise. In the case of *Ackerman's Administrator* v. *Vreeland's Executor, 1 McCart. 23,* the testator devised certain lands to his three daughters in fee, to be equally divided between them, and then provided that if either of them should die without issue that the portion of the daughter so dying should go to the testator's surviving children. The limitation over stood in opposition to the

devise itself, there being no event other than the death of the original devisees expressed in the will to which it could be fairly referred, and in accordance with the first rule established by *Pennington* v. *Van Houten*, it was held that the daughters took a vested estate in fee, subject to be divested at their death and vested in those to whom the estate was limited over, provided they died without leaving issue. The same rule was applied in the decision of *Rowe* v. *White, 1 C. E. Gr. 411;* to one of the devises in *Wurts' Executors* v. *Page, 4 C. E. Gr. 369;* and in *Groves* v. *Cox, 11 Vr. 40.*

The case of *Williamson* v. *Chamberlain, 2 Stock. 373,* is an example of the application of the second rule established by the decision in *Pennington* v. *Van Houten.* In that case the testator gave a life estate to his wife in his real and personal property, and then declared that after the death of his wife the same should be sold and divided among his children. He then declared that if any of his children should die without lawful issue his or her share should be divided among the survivors. It was considered that the limitation over stood in opposition not to the devise itself, but to the event of the distribution of the estate among the children after the death of the wife, and it was consequently held that the limitation over was defeated by the death of the mother during the lifetime of the children. Other examples of the application of the second rule in *Pennington* v. *Van Houten* will be found in the construction put upon certain devises in the case of *Wurts' Executors* v. *Page, 4 C. E. Gr. 373, 374;* in *Baldwin* v. *Taylor, 10 Stew. Eq. 78; S. C. on appeal, 11 Stew. Eq. 637;* in *Barrell* v. *Barrell, 11 Stew. Eq. 60;* and in *Bishop* v. *McClelland, 17 Stew. Eq. 450.*

Applying the rules of construction established by *Pennington* v. *Van Houten* to the case in hand, it is clear that if the testator, immediately after the devises to his sons, had declared that in the event of any of them dying without issue and leaving a widow, the widow of the one so dying should enjoy the lands devised to him during her widowhood, and that then it should go to .the testator's. heirs, the construction adopted by the court below would be beyond criticism, for the limitation over would

Patterson v. Madden.

be immediately connected with the devises themselves and set in opposition thereto. But the clause containing the devise over does not stand in the will in that connection. Instead of being immediately connected with the devises to the testator's sons it follows after that portion of the will which deprives them of the power of alienation during the lifetime of their mother. What the testator has said, in effect, seems to me to be this: I devise a farm to each of my sons, but they shall not have the power to alienate the same during the lifetime of their mother, my wife; upon the death of my wife, however, they shall hold the lands devised to them respectively free from any condition and with full power to alienate; but if any of my sons shall die without leaving lawful issue &c., then over. Read in this way the limitation over stands not in opposition to the devise itself, but in opposition to the event of the devisees coming into the possession and enjoyment of an absolutely free and unfettered ownership of the lands devised. That being so, the limitation over becomes operative only in case the devisee dies before his power to alienate comes into existence, or, in other words, before the death of his mother.

The mother of the appellant having died before the making of the contract for sale which is sought to be enforced by this proceeding, the appellant was, at that time, seized of an indefeasible estate in fee-simple in the lands which were the subject-matter of the contract, and is entitled to a decree of specific performance against the respondent.

The decree of the court of chancery should be reversed and a decree entered in accordance with these views.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BOGERT, BROWN, SIMS, SMITH, TALMAN—12.

*For affirmance*—None.